Good morning and welcome. Thank you for coming to the Ninth Circuit. Judge Bay and I would like to thank everyone here at the Pioneer Courthouse for being so welcoming. Thank you. There are a number of matters that were submitted today. They are United States v. Rocket, Cochran v. O'Malley, United States v. Jonas, McLean v. McLean, and Sancho v. Jackson. That leaves one case remaining for oral argument, so if counsel would please come forward. Thank you. May it please the Court. Matthew Kalmanson for the defendants, City Manager Sarah Medary from the City of Eugene, and Chief of Police Christopher Skinner, counsel. And I'll be reserving five minutes for rebuttal. Your Honors, this is the quintessential case where qualified immunity should apply. The doctrine is meant to protect public officials who make difficult decisions in events as they are unfolding, they operate under less than perfect information, in an environment where the legal rules are complicated and difficult to apply. That describes the exact situation that my clients were facing at the end of May and early June of 2020, when they're dealing with riots, violence, and unrest in the city of Eugene, Oregon, after the murder of George pandemic. May I ask you a question about the retaliation claim? It's a little bit unclear. It seems to be making both a claim against your clients for imposition of the curfew, but also for enforcement of the curfew. What is there in the record that your clients had any role in the enforcement? Thank you, Your the curfew, not the enforcement. There were claims against the individual police officers for which they were granted summary judgment, but as against the officials, my understanding it was based on the imposition of a curfew. I'm just looking at paragraph 141 of the second amended complaint. It says plaintiffs were engaged in constitutionally protected activity when the defendants acting or purporting to act in the performance of their official duties as law enforcement officers. Pursuant to the orders and policies of the city of Eugene, Madari Skinner caused plaintiffs to suffer injuries. So I guess I'm a little bit, I don't know if they were actually trying to have this be against the law enforcement officers who actually arrested them, but you're saying this is solely an imposition of the curfew claim. That's how I understand it your honor. That's certainly how it was argued below. By whom? Who argued it as solely an imposition claim? When I read the transcript of the argument, and part of that is in the ER because we had trusted for some preservation reasons, they were talking about... Council for whom? Council for the city. Council for the city argued it that way. And you know... How did the plaintiffs argue it? Yeah, I'm not sure and we'll be able to ask them that question, but I don't believe they've that, for example, the city manager had anything to do with the enforcement of it. In fact, the argument that was made against the city manager was that she deferred completely to the chief of police, and you'll see testimony to that effect in the record also, as to enforcement. The enforcement was done by individual officers, obviously on the streets at the time, and so I didn't read the claim that way as having to do with enforcement as much as the imposition of curfew itself. And if there's any ambiguity about this claim, who bears the burden? Isn't it the plaintiff's burden when a defendant asserts qualified immunity? It's the plaintiff's burden to show that the rights were allegedly violated and were clearly established? Correct. Or, well, actually, you have to show that was clearly established, but they have to show the rights were allegedly violated, correct? They have to show that there's clearly established case law once we raise qualified immunity that would support this type of claim, that the imposition of a curfew could be retaliation against a large group of people. And so it would be their burden to come up with a case that proves that, and as we argued at length, there is no case that we're aware of that shows the contours of retaliation claim in that way, that the imposition of a curfew by executive officers, essentially, dealing with violence and the like, could lead to a retaliation claim against essentially an entire group of protesters of whom they don't, they're not even aware of who these individuals are, necessarily. So curfew tailored only to the protesters? No, the curfew applied to the entire city of Eugene. And so, as I was saying, Your Honors, the situation that the city of Eugene was facing at that time is the same situation that was being faced by other cities at that time. The city of Portland, for example, the city of Salem, for example, and also other cities throughout the country. And so we had, we saw this same type of act imposed by other cities, which were temporary nighttime curfews that were designed to preserve public order. And we saw curfews in the city of New York, we saw curfews in the city of Washington, DC, and we since have seen opinions showing that those curfews, which were more restrictive of speech than the city of Eugene's, were found to be constitutional as a matter of law based on Ninth Circuit precedent, Menotti versus Seattle. But how is this, you know, Menotti was a war zone with the WTO, President Clinton was there, heads of state were there, the level of violence was was far greater. And how do you distinguish this from Collins, where it seems that you're relying on previous nights violence to justify this curfew? Thank you, Your Honor. So I have a couple of responses to that. One is, if we just start with a step back that we're talking about qualified immunity. We're not talking about whether it is or is not constitutional. And so when we think about the qualified immunity standard, it has to be beyond debate that what these defendants did was unlawful. So even if we were to do what we call fact-matching in the state of Oregon and try to compare the facts of the city of Menotti and the facts of Collins and see which one is closer, there has to be some wiggle room in there because it's supposed to protect all but the cleanly incompetent when we're talking about qualified immunity. So the first point I would make is, even if we can find distinguishing factors between Menotti and this case, that's not enough. We have to dig a little bit deeper. And so to answer your question more directly, Your Honor, the major difference between Collins and this case is that Collins was not a curfew case. Collins dealt with a ban on all demonstrations in the city of San Francisco for an indefinite period of time. During day or night? During day or night, Your Honor. Correct. It was a ban on all demonstrations. It was not a curfew case. That was Collins. And what happened in Collins is you had violence and unrest on one day, and the next day before anything else had happened, they banned all demonstrations in the city of San Francisco. But the Court said, and this is the Ninth Circuit speaking, there was an argument made by the defense in this case, well, this should be constitutional because we also had a curfew in place at the time. And the Court says, proclaiming a curfew that requires people to remain at home during certain hours is obviously an entirely different matter from prohibiting only specific First Amendment activities during those or other hours. The latter action is far more directly restrictive of the right of free expression. So right there, that is a distinguishing factor. Collins does not deal with a curfew, and in fact, Collins specifically says it's not dealing with a curfew. And that's important because if this Court were to take that statement from Collins about violence one day not supporting a ban on demonstrations the next, and apply it to a temporary nighttime curfew, as far as I know, it would be the first Court to ever say that. The first appellate Court to say that. And in Nunez, the Ninth Circuit later said that a curfew equally prohibits conduct that's necessary precursor to exercise your First Amendment rights. I'm sorry, I missed the first thing you said. I'm just looking at Nunez, where it says, San Diego's broader restriction, which was a curfew on teenagers, prohibits conduct that is a necessary precursor to most public expression, thus qualifying as conduct commonly associated with public expression. So it seems in Nunez, they didn't draw the same distinction that the Ninth Circuit did in Collins between a ban and a curfew. Well, I think there's no question that a curfew restricts free speech in some regard, but when we're thinking about the test, whether it's a reasonable time, place, or man and restriction, we have to look at the details. And so we have to look at, for example, the nature of the government act. And if we have a case from the Ninth Circuit saying that a ban on demonstrations is a much more restrictive issue when it comes to free expression than a curfew, how can we say that these public officials should have known that all, you know, all but the patently incompetent, that it was beyond debate, that Collins applied to what they were trying to do, and not Menotti, which was in fact a curfew case. And so are the facts of Menotti a little bit different than this one? Of course they are. Seattle is a much bigger city. They were dealing with a very different thing at the time. But if you look at what the Ninth Circuit does in Menotti, they essentially dismiss most of the arguments that you see in this case. For example, this idea that you can't rely on the violence of a previous day in deciding what to do. Menotti says that's not true. Menotti says you can look at patterns of behavior. And how else would you look at patterns of behavior unless you look at what happened the day before? And I think it's just frankly unrealistic to say that public officials, when they're thinking about imposing a curfew, are unable to think about the looting and destruction that had happened 24 hours prior. Why would that be? And again, we're talking about less of a intrusion on speech. Another thing that Menotti Court says... I know you're trying to reserve time, but I want to go back to the retaliation claim. Because one of the things that troubles me when I'm trying to figure out how to apply qualified immunity, which is an affirmative defense here, but the Supreme Court has told us that we need to define the right at issue at a high level of specificity, is that there's not even agreement between the parties or clarity from the record, as far as I can tell, as to the nature of the retaliation claim and whether it's an imposition claim or an enforcement claim or both. And if it's an enforcement claim, what exactly the alleged facts are with respect to your client's involvement in the enforcement. But despite that lack of clarity, then when I look at your summary judgment briefing below, although there is a high-level assertion of qualified immunity, in the actual briefing on the retaliation claim, there is not one mention of qualified immunity in the section, and it focuses solely on the retaliation issue. So there's essentially no argument in the briefing that I can find that talks about step one or step two, and with the level of specificity you need to actually engage in the type of analysis that the Supreme Court has told us to do. So I'm having trouble with essentially the argument that qualified immunity implies. I understand the plaintiffs bear some burden, but it is an affirmative defense, and there was essentially no development of that argument below. One thing I would say to that, Your Honor, is if we are correct that the individuals are entitled to qualified immunity because the curfew itself, it was not beyond debate that the curfew was unconstitutional at the time, that would naturally flow to the retaliation claim also. Because again, because if we're talking about the imposition of the curfew, which is how this matter was briefed, I don't recall seeing an argument, certainly before this court, saying, oh no, no, that's not what our claim is. Our claim is something else. We briefed it as the imposition of the curfew itself is the retaliatory act. I'm pretty sure in the answering brief there was an argument that they're raising both kinds of claims, and it's arguably in the in the allegations, although at a fairly vague high level that Judge Koh read earlier, it's in the complaint, the operative complaint. It appears to me at least that they're raising both imposition and enforcement, retaliatory enforcement, and I didn't really see an argument in the retaliation section of your motion for summary judgment about qualified immunity, and yet I understand you pressed the district court for a ruling on qualified immunity. You said that the magistrate judge essentially erred, or you objected to the lack of a qualified immunity ruling on retaliation, and then you got one, but I think at a very high level of generality in part because I think that's all we have. So I don't, I'm not, again, I'm struggling with, given the lack of actual briefing and analysis on this issue in the motions papers below, what to do now. Well, like I was saying, if the if the court were to agree that they're entitled to qualified immunity for the imposition of the curfew itself, then it's hard to understand how there could be a claim for retaliation arising out of arresting somebody. Well, you could have a lawful curfew that's enforced in a retaliatory way. I think that that would be the argument. So I don't think just because the curfew is lawful or there would be a qualified immunity for the imposition of the curfew, that necessarily means that the enforcement, if there was a, if there was a factual basis for saying that it was enforced in a viewpoint discriminatory way or in retaliation for certain activity, I think that would just be a separate claim that requires a separate analysis. But there's, there's no evidence that my clients or even an allegation arrested anybody. So I guess I don't understand that to take the claim and turn it into an enforcement claim against the city manager, who is a landscape architect, and the chief of police, who was not on the ground arresting people. How could there be a retaliation claim against them when they didn't do the retaliatory act of arresting somebody? That's a causation argument. It's not answering, Judge Sung, that you didn't raise qualified immunity in the court below. Could you address that? I believe we did raise it in the context of the enforcement, the imposition of the curfew decision. And so if the, if you're entitled to qualified immunity because the curfew itself, it's not beyond debate that that's invalid. As we understood the retaliation claim, it was based on that. So those two arguments are essentially the same. If you're entitled to a qualified immunity because you imposed a curfew that was, it was reasonable for you to think it was constitutional, and then people were arrested, now you might have a retaliation claim against the individual officers who arrest you, but I don't understand how that could be an enforcement claim against people who, there's no evidence they have anything to do with enforcement. So that argument, the imposition claim, would apply to both. And so that's where the qualified immunity analysis at least came up. That's how it was understood by us below, that it had to do with the imposition of a curfew. And the question was whether that was a lawful exercise of authority that violated the First Amendment. So if, if, I mean, because I believe plaintiffs have been arguing that they do raise an enforcement claim against your clients. What, what I didn't see, I guess in the summary judgment briefing is, you know, or a motion to dismiss for failure to state a claim, or a motion to make, you know, the facts more definite, or to make the claim more clear, or a motion that says there is absolutely no evidence that my clients had any role in, you know, enforcement decisions. You know, so the grounds on which you're saying there is no retaliation claim to me have all to do with that, and very little to do with qualified immunity. But what is the case that they're citing that could hold a CINI manager liable for the arrest of somebody that happens on the streets pursuant to a lawful order? So we would, again, go back to that question. And so it's, it's, again, unclear to me the nature of that claim. And if it turns out that that's the only claim that survives this, that would be a, it would go, it would be in a very different scenario, a situation that it is right now, where we are talking about people being personally liable for the imposition of a curfew, when the same type of curfew has been upheld based on Ninth Circuit precedent other places. So if that's all that's left of this claim, that, that would be significant. But again, it seems unclear to me what even that case would be. You know, where, plaintiff does have a burden here to come forward with proof of clearly established law that would support that claim. And we're struggling to even define what that claim is. So how could plaintiffs have met their burden of coming forward with clearly established law when we certainly raised qualified immunity? If the answer is, well, no, no, that's not our claim, and here's a case that supports the type of claim we are asserting, what is that claim? We don't know that. So it looks like in your objections to the magistrate judge's report and recommendations, you said, I was unclear earlier, that the plaintiff has the burden on prong two and that the magistrate judge hadn't addressed that, that you had raised that the plaintiff hadn't raised or pointed to clearly established law. Correct. And then that's why Judge Aiken, the district judge, then went ahead and ruled on prong two and said, no, I think Collins is the clearly position of the curfew. And then when it came to retaliation, I think the judge Aiken applied some sort of general case law that says you can't retaliate against people for exercising First Amendment rights. At a very general level of specificity, which again we would think is not consistent with qualified immunity law. I am way over my time. I'm happy to answer any additional questions. Well, I think we are still a little bit confused about the retaliation, but maybe in rebuttal, after we hear from Plaintiffs' Counsel, we can ask you further. Is that all right? Okay. Thank you. Go ahead, please, and take a seat. Good morning. Good morning. May it please the Court, Mary Ann Dugan, for the Plaintiffs' respondents in this case. I wanted to quickly address the retaliation claim, since that was the last addressed issue. The, just to be clear, the complaint did claim retaliation both for the issuance of the curfew and the enforcement of the curfew. And how did, and just so I understand your claim, how did Medari and Skinner enforce, is it a facilitation argument that you're making? The, and just to be clear, that was not really drawn out in the summary judgment briefing, but the enforcement issue would not fall on Ms. Medari. She was not in charge of enforcing. However, Chief Skinner was overseeing all of the police that night. A reasonable jury could certainly find that both Skinner and Medari were aware of the anti-police statements expressed during that weekend and could find also, as we listed in footnote four on page 12, that there were prior severe riots with thousands of people and fires that did not result in a curfew, but those were not political riots. Those were police, sorry, those were student parties. So a reasonable jury could find that issuing the curfew as well as the way it was enforced through the police department with Chief Skinner at the helm was retaliatory. And just to clarify, you are arguing that the curfew was imposed with a retaliatory motive and that would implicate both Medari and Skinner and then you're conceding, however, to the that there is a claim that it was enforced in a retaliatory manner that would only go to Skinner? Correct, and to the now dismissed officers. And what facts or evidence is there in the record of retaliatory motive other than what you're inferring from, you're saying that there's, is there record of these other what you call non-political riots which are parties that are comparable? Is there evidence in the record of these comparators? We dropped them in a footnote requesting judicial notice. This was not something that was put to the test at the summary judgment stage by the defendants. They chose not to address the factual basis of the retaliation claim. Rather, they addressed the qualified, sorry, the issue of whether you could have group animus, animus against a group. And Judge Sung, you're correct that the defendant did not argue qualified immunity in the summary judgment motion on the retaliation claim. And contrary to defendant's argument, even if you found that the curfew, there was qualified immunity for issuing the curfew as a general concept, that does not solve the issue of whether there's qualified immunity for retaliation. In O'Brien, the Ninth Circuit. But what are the specific facts showing there's a genuine issue for trial on this claim? The specific facts that would be brought out at trial would all amount to circumstantial evidence, which is not unusual in a retaliation claim, obviously. But what is it? Sort of following up on Judge Sung's point, what is the retaliation evidence? So three days of very loud anti-police, anti-city sentiment. Fires in a Starbucks. There's some fairly serious conduct here as well, correct? Correct. That is not the focus of our retaliation claim. That happened two days earlier. The focus of the retaliation claim is that with people in the streets saying ACAB and showing severe anger with elected officials and police, and compared to these prior literally riots of college students leading to 400 people losing their phone service, for example, no curfews were issued. This was unprecedented to our knowledge. Those would be the facts that would come out at trial that were not put to the test at the summary judgment stage. What's your best case to support your retaliation claim? As with most retaliation claims, they are difficult. I used to do employment discrimination law, and you're almost always entirely relying on circumstantial evidence of animus. No, but I mean to show the clearly established prong. So you know, Brian, I was moving on to that actually. This court denied qualified immunity to university administrators for retaliation when they restricted access to a university building based on what a jury could find was based on student speech. That's an example of an administrative order that on its face might appear to be neutral, and yet it was allowed to proceed to the jury on retaliation claim. And what exactly are you alleging was retaliatory in the enforcement of the curfew? Well, in the enforcement, so the issuance itself we're alleging was retaliatory to to shut down the entire city based on speech. And then the imposition claim. Right, correct. The enforcement was bizarre. People who had voluntarily moved themselves out of the downtown curfew area to the Whole Foods and were kneeling in respect for George Floyd were told, you have three minutes before the curfew goes citywide, you start dispersing. They immediately started dispersing, but they were still arrested as they were trying to get to their cars. So the enforcement was, it was a clearly, to me, obviously not to the world, clearly retaliatory to take peaceful protesters who were trying to disperse and start arresting them for curfew, where they could have just let people go to their cars. And so you would be, you would be arguing, you would be essentially inferring a retaliatory motive from the circumstances? Yes, Your Honor, yes. And what is your best case or the prong to the clearly established law on the enforcement? So prong to meaning, is there a case exactly on point like this or close enough? You'll be arguing that it's obvious or what, what is your prong to argument? Well, I think for retaliation, because each type of retaliation can be so unique and, you know, tailored to the circumstances, I'm not aware of a qualified immunity, qualified immunity being granted to a government official who is alleged to have acted in a retaliatory manner. And to put a finer point on it, the individual officers who carried out those arrests are not defendants in the enforce, retaliatory enforcement claim? They were, they were. They were dismissed. Before us now, the only question it would be Chief Skinner, and then is there any evidence in the record, deposition, testimony, anything to suggest that Chief Skinner ordered the officers to respond in this way? Again, since it wasn't tested at the summary judgment stage, what I would say from my memory is that he was fully aware that there was very few minutes, you know, less than five minutes notice. He gave that notice to his lieutenants and they gave it to the sergeants, and he was aware at the time that it was being then used to authorize arrests of people trying to disperse, yes. You know, in your retaliation claim, you actually do assert it against Medari for the enforcement. Well, so what you're saying today is different than what's in your complaint, right? The retaliation claim included the issuance of the curfew as well as the enforcement. There was, our intent was to have the claim against Medari be for the issuance of the curfew. No, but you say as a direct and proximate result of the unconstitutional actions of the city, Medari and Skinner, including the implementation and enforcement of unconstitutional curfews, plaintiffs suffered injuries. You don't say Medari is not liable for the enforcement portion of your retaliation claim. Well, it's all thrown in together. Could have separated those out, implementation, enforcement. You're correct. We did not. We should have. I don't think that changes the nature of the complaint, which is to be liberally construed. So on the, sorry, on the curfew claim, you know, the contrary to defendants' arguments, the on that claim, it does involve facts and it involves facts that actually have already been decided. They were decided by the magistrate judge in the context of the plaintiff's motion for summary judgment. That's ER 62. And the, then the Article III judge, even though defendants chose not to file objections, reviewed that and found no clear error. That's at ER 81. And the magistrate went on at length to explain why the facts in this case were indistinguishable from, from Collins. So at ER 62 to 63. You know, when I read Collins, it seems like there are a bunch of people gathered at a plaza. It seems like a very factually different situation than the one here. Can you please address that? Yeah. So again, Collins has all this language that, you know, we're not addressing the question of whether there's widespread continuing violence that appears to be beyond the ability of the police to control. A time-limited ban on all demonstrations might be lawful. It does seem to leave open the question that arguably could be before us now. Well, so at ER 65, the magistrate went on in great detail about the events of the 31st and said that, and concluded in factual conclusions that were not objected to, that the evidence here simply does not support a reasonable belief of the kind of imminent or extensive violence that would justify expansion of the curfew to the entire city, even in viewing all evidence in the light most favorable to defendants. And that was after he went through a discussion of the actual, he noted that he looked at the videos, he read the police reports, he looked at photos. He said there was no evidence to give concern about a citywide. That goes to step one of the qualifying I think that there was a violation. There was a finding essentially that the curfew itself was not a reasonable time, place, manner restriction. But there's a different question of whether there is clearly established law under the circumstances presented, whether the imposition of a curfew violates the First Amendment. And my understanding is that you're relying solely on Collins. My addressing a ban on protests, not a curfew. And in fact, the court, we said this is not a curfew. There was a curfew actually in that case that was not essentially I think either unchallenged or the court said there's no problem with the curfew. This is different though because this is a ban on protests. And the whole analysis had to do with the fact that it, the ban was specific to First Amendment activity and during the day. So to the extent there was anything analogous in Collins, the curfew was approved of. So I don't understand how Collins clearly establishes that the curfew here was a violation. Even, even if there was a violation, the question is whether there is qualified immunity for individuals with respect to the damages claim. Correct. So two, two responses, Your Honor. As you noted, I think Collins needs to be read in context with Nunez because Nunez did address a curfew. It did not address the same issue in Collins, which is the, the discussion of curfew in Collins is dicta. The issue of law that emerged from Collins is that the occurrence of limited violence and disorder on one day is not a justification for banning all demonstrations, peaceful and otherwise, on the immediately following day. Nunez said if you put in place a curfew, which in that case was a juvenile curfew, you have to leave open, you have to have exceptions for First Amendment activity. You can't shut down an entire city for the entire night, even to juveniles, without leaving open First Amendment activity options. So if you read those two in context together, this type of curfew, a citywide curfew, now keep in mind Menotti was a very narrow geographic scope curfew between the hotels and the event, the conference event. The other distinguishing factors in Menotti were... Let's talk about the events here. The fire at Starbucks was the day before, not two days before. No, it was May 30th. It was the night of May 29th into the morning of May 30th. It was the morning of May 30th. Correct. 48 hours earlier. So that's the day before. That's the day before. And on May 31st, you have the protest organizer expressing concern that the peaceful protesters have dispersed and the people who are remaining are intending to engage in riot behavior. That's the organizer, right? And then you have people striking light poles, police vehicles with hammers. You have them shooting paintball guns at the police. They're planning to block the basically critical route to the hospital. So I guess, you know, my question for you is, you know, based on these facts, what is the established law here? With your respect, Your Honor, the magistrate in deciding our motion for summary judgment, where all the evidence had to be taken in the light most favorable to the defendants, reviewed all the evidence you just cited and found that the level of violence on the 31st squarely fell within the Collins rule of law, issue of law. The defendants waived any right or ability to challenge those factual findings. This case is nothing like the level of disruption that was going on in Manatee or in the cases defendants cite in their 28J letter. In all three of those cases, there were huge numbers of arrests. In Jeffrey, which is in the 28J letter, 34 officers were injured. In Manatee, there were... Well, show me in Collins, where is that level of threat of violence and violence? Collins did not involve that, and neither does this case, as the magistrate found as a matter of fact. I see I'm out of time, Your Honors. Thank you. Thank you, Your Honors. I think, I suspect it'll go longer, but three minutes is fine. Okay, thank you. Would you like me to start with retaliation? I think that'd be helpful. Okay. So I think what you just heard is, even though we're calling it enforcement, the retaliation claim is based on the imposition of the curfew. That's what you just heard them struggling with. I heard that there was an imposition claim and an enforcement claim, and that the enforcement claim was brought against Chief Skinner only. Correct. With respect to retaliation. Right, but when you asked what is the basis for it, it was the imposition of the curfew, and the fact that there wasn't enough notice before officers started arresting people. There's no allegation. To be fair, because we're going to construe all the facts in favor of the non-moving party here, there's an allegation that the manner of enforcement, that the giving of little notice, and the failure to give people actual opportunity to disperse, was essentially a more strict enforcement, or more onerous enforcement than they would have if they did not disagree with the viewpoints being expressed. Right. And again, it's hard for me to understand how that's different from the imposition of the curfew claim. Because the imposition has to do with the existence of the curfew, and the enforcement has to do with the manner in which the curfew was being enforced. But if the curfew says you cannot be on public streets starting at 11 o'clock, and you are arrested for being on the public streets after 11 o'clock, it is difficult for me to understand a enforcement claim that is not based on whether that curfew order is valid. If the curfew order is valid... Okay, take it as a given that there is a factual argument here that was, that there's, if there was not but for viewpoint discrimination or retaliatory motive, they would have given the protesters the opportunity to get in their cars and drive away, even if it was 11.03 p.m. So but for the first event violation, they would not have enforced the curfew, is what we're saying. In the manner that they did, they would have allowed them to leave at 11 o'clock, even if it took them a few minutes to get home. That's the, I believe that's my understanding of the allegation, at least as represented here today. So there's something there for you to respond to. Correct. And so again, as I view that, we're still talking about the nature of the curfew itself, because it is the claim when it relates to Chief Skinner. So now we have the city manager out on this idea. But as it relates to Chief Skinner, as it was argued before to the district court in SFER-777, the argument that was made would apply to this claim as well, which is simply because you are enforcing a curfew that applies to everybody, to an entire speech based on an entire group. What is the general principle, the clearly established law, that would show that what Chief Skinner did was incorrectly? Because again, the theory you just heard is not that Chief Skinner is out there arresting people. That's not the theory. The theory is in the manner that you retaliated against this entire group of people through your enforcement of an otherwise valid curfew. So where's the case that says that? Because you're arguing that it's nothing different from the imposition claim. And let's imagine here that they had evidence that there was another curfew and people were given a five minute grace period to comply. But here they have this curfew in response to the George Floyd protest and they don't give that five minute grace period. They're saying the decision to not give a five minute grace period shows that they were enforcing it in a retaliatory way, with retaliatory motive. So it's not just, even if the imposition of the curfew was, well, I think the argument, it's not, actually, there was a finding that you think it was not a reasonable time, place, manner restriction, but you're arguing it was not clearly established to be. So in this case, there is, actually, the curfew is not lawful. But pointing that aside, if the curfew was lawful, but it was being enforced in a more strict manner than it would have been otherwise enforced, that's the argument. Correct. And the argument that we made would apply to that theory as well, which is your retaliation claim is based on, essentially, the collective speech of an entire group of people and not the individual circumstances of each arrest. That is the argument that was made. So that was causation, not qualified immunity, correct? No, that was qualified immunity because we're saying it's not clearly established that this is a retaliation claim, that you can establish, that you can say that there is a retaliation claim based on the speech of this collective group of people who are out in the streets. And if you look at ER 77 and the foregoing pages, that's the argument that's being made by counsel to the magistrate judge, that this is just not a recognized type of retaliation claim. It has to be against the individual people, not the collective speech of the group. There's no case that says that. So it goes to the merits in the sense that the theory, frankly, doesn't make sense to me because you have what we're positing is a lawful curfew. But if we put that aside, just that the theory itself doesn't make any sense, where's the clearly established law that supports a theory of this type? Where is it? And we did make the argument that this sort of collective retaliation against everybody who's protesting, there is no retaliation claim that we've seen that's like that. And the case that we have seen... A disagreement with the viewpoint being expressed at a protest is not a basis for a First Amendment retaliation claim? Not when you're talking about a lawful curfew, an enforcement of a curfew. That if we're saying that it has to be individual, that you have to know something about what the people are doing. And was there any evidence in the record about this retaliatory motive or intent? I'm not aware of any evidence in the record. As to the arrest themselves? Yes, to the enforcement. No. I mean, not that I'm aware of. There's evidence that they were arrested because they violated the curfew. I think it's undisputed that they violated the curfew. Let me ask you another question. Earlier, Judge Sung mentioned, well, you didn't file a motion for a more definite statement. You didn't file a motion to dismiss 12b-6. Why don't you address that point? The cases that don't rule on qualified immunity for the failure to seek a more definite statement, those are all motions to dismiss, right? You're going to have all this discovery that would further flesh out the facts, correct? Correct. I mean, at this point, we have the discovery. Right. Discovery is closed, right? You've gone through summary judgment? We've moved for summary judgment, correct. The only thing next is trial. Is that right? Yes. So wouldn't it be a perverse incentive for a plaintiff to say, well, if you just do a very vague claim, you're going to survive and be able to go to trial because no one will be able to assess the qualified immunity? I mean, I would agree with that. But I guess what I would say here is, at this point, the facts have been developed and we're still struggling to state exactly what this claim is. And my clients are being faulted for not raising the correct qualified immunity against a claim that none of us seem to be able to state with any specificity. And the question is supposed to be, what's the clearly established law that's supposed to guide these public officials'  And did they do something that is so patently unreasonable that it's beyond debate that it violated the law? And we can't even define what it is. So how could they not be entitled to qualified immunity under these circumstances? I understand there's sort of procedural arguments that could be made about ways to make the claim more definite. But again, it is plaintiff's burden to come forward with a case that governs this specific theory. And we still don't know what the theory is. So how could there be clearly established case law that would say that we don't even get qualified immunity for it? Thank you, Your Honor. All right. Thank you to both counsel for your helpful arguments today. Thank you. And this case is submitted and we're adjourned. All rise.
judges: BEA, KOH, SUNG